**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**THUNDERBIRD VALLEY, INC., et al. Defendants.**

No. Civ. 72–4100.

United States District Court,
D. South Dakota, S. D.

March 19, 1973.

Clinton E. Watkins, Denver, Colo., appeared in behalf of plaintiff.

Russell R. Greenfield, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S. D., and Peter A. Neisser, Phoenix, Ariz., appeared in behalf of the defendants Thunderbird and Agers.

Robert C. Heege, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., appeared in behalf of the defendant Clifton.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This action was instituted by the Securities and Exchange Commission (S. E.C.) seeking a temporary restraining order, a preliminary injunction and a final judgment, pursuant to 20(b) of the Securities Act of 1933, as amended, 15 U.S.C. Sec. 77t(b), enjoining the defendants from engaging in acts and practices which constitute and will constitute violations of 5(a) and 5(c) of the Securities Act of 1933, as amended, 15 U.S.C. Secs. 77e(a) and 77e(c). Jurisdiction is based upon Section 22(a) of the Securities Act of 1933, as amended, 15 U.S.C. Sec. 77v(a). More specifically, the S.E. C. seeks to enjoin the defendants from directly or indirectly making use of any means or instruments of transportation or communication in interstate commerce or the mails to offer to sell, to sell, or cause to be carried through the mails prospectuses or securities, namely, notes or other evidences of indebtedness issued by Thunderbird Valley, Inc., or

any other security of any issuer, unless and until a registration statement has been filed with the Security and Exchange Commission as to such security.

The S.E.C.'s requests for a temporary restraining order and a preliminary injunction have been denied. Immediately before the court is a motion to dismiss for failure to state a claim upon which relief can be granted by all defendants. Defendants Thunderbird Valley, Inc., and Joe S. Agers have also challenged the court's subject matter jurisdiction and moved for summary judgment.

Counsel for Thunderbird Valley, Inc., and Agers has urged that this matter be settled expeditiously and has acquiesced in substantially all of the S.E.C.'s statement of relevant facts, as evidenced by affidavits, accompanying exhibits and the pleadings. These defendants quarrel not with the actual facts but with the manner of expression.[1] It is upon this concession, and with a belief that there is no issue of material fact requiring resolution for this ruling, but one only of law, that I now consider the defendants' motions. The following facts are conceded:

1. Defendant Thunderbird Valley, Inc., is a corporation organized under the laws of the State of Arizona, with its principal offices located in Arizona.

2. Defendant Joe S. Agers is a resident of the State of Arizona, and is the president and chief executive officer of Thunderbird Valley, Inc.

3. Defendant George L. Clifton is a resident of the State of South Dakota.

4. The defendants, Thunderbird Valley, Inc., Joe S. Agers and George L. Clifton, have offered for sale and sold (defendants prefer the terms "negotiated" and "negotiate") notes and evidences of indebtedness (the defendants also take exception to this characterization of the instruments involved) issued by Thunderbird Valley, Inc., to residents of South Dakota.

---

1. See defendants' brief in Reply to Plaintiff's Memorandum in Opposition to Defendants' Motions pp. 4–5.

5. In the offers for sale and sales of notes and evidences of indebtedness issued by Thunderbird Valley, Inc., the defendants Thunderbird Valley, Inc., Joe S. Agers and George L. Clifton have made use of the means and instruments of transportation and communication in interstate commerce and of the mails and have carried or caused such notes and evidences of indebtedness to be carried through the mails and in interstate commerce by means and instruments of transportation for the purpose of sale and delivery after sale.

6. No registration statement is in effect nor has a registration statement been filed with the Securities and Exchange Commission with respect to notes and evidences of indebtedness issued by Thunderbird Valley, Inc.

7. The notes and evidences of indebtedness issued by Thunderbird Valley, Inc., are of the form represented by Exhibits B1, C1 and D1 to the affidavit of Darwin Sletten dated November 16, 1972, which was filed with the Court in support of Plaintiff's application for a temporary restraining order and motion for preliminary injunction; by Exhibits E4, E6, F3, G7 and G8 to the affidavit of Anthony P. Heiberger dated November 17, 1972, which was filed with the Court in support of Plaintiff's motion for preliminary injunction; by Exhibit D to the affidavit of William M. Spielmann dated November 30, 1972, which was filed with the Court in support of Plaintiff's motion for preliminary injunction and by Exhibit B to the affidavit of Bonnie J. Ingebritson dated November 29, 1972, which was filed with the Court in support of Plaintiff's motion for preliminary injunction.

8. The notes and evidences of indebtedness issued by Thunderbird Valley, Inc., are each secured by a realty mortgage of the form represented by Exhibits B2, C2 and D2 to the affidavit of Darwin Sletten and Exhibits E5 and E7 to the affidavit of Anthony Heiberger or Exhibits F4, G9, G10 and G11 to the affidavit of Anthony Heiberger, Exhibits E and F to the affidavit of William Spielmann and Exhibits C and E to the affidavit of Bonnie J. Ingebritson.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure raising the defense of failure to state a claim upon which relief may be granted directs the court's inquiry to whether the allegations constitute a statement of a claim under the liberal pleading standards of the federal rules, specifically Rule 8(a). The test is often stated as "whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 Wright and Miller, Federal Practice and Procedure, Sec. 1357 (1969).

The complaint charges the defendants with violations of 15 U.S.C. Secs. 77e(a) and 77e(c). The allegations are that the defendants have been and are now directly or indirectly making use of federal jurisdictional means to offer to sell, to sell and to deliver securities, namely, notes and evidences of indebtedness issued by Thunderbird Valley, Inc., and that no registration statement as to said securities has been filed, or is in effect with the Securities and Exchange Commission.

■ Construed in the light most favorable to the plaintiff, the complaint has stated sufficient facts from which the defendants can frame a responsive pleading and, taken as true, provide a basis for relief. The defendants' motion to dismiss for failure to state a claim is denied.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR SUMMARY JUDGMENT.

These two motions by defendants Thunderbird Valley, Inc., and Joe S. Agers will be considered together because they focus upon the defendants' main contention and defense. The de-

fendants vigorously maintain that the documents involved here are not "securities"[2] under the Securities Act of 1933. Therefore, they contend, if these notes are not "securities", this court lacks subject matter jurisdiction and their motion for summary judgment should be granted. Counsel for the defendants represents that this is an unprecedented situation insofar as a federal court has never ruled on whether "real property notes" are securities under the Securities Act of 1933.

It is the defendants' contention that the 1933 Act did not intend to embrace real property notes and mortgages. This position is premised upon, *inter alia,* the defendants' extensive analysis of the historical and economic circumstances from which the Securities Act of 1933 was born. With the S.E.C.'s concession that this is not an investment contract, the defendants contend they fall without the statutory definition of a security and, thus, outside the regulatory provisions of the 1933 Act. But the defendants are quick to point out that federal regulation is imposed upon their business by the Interstate Land Sales Full Disclosure Act, which became Title XIV of the Housing and Urban Development Act of 1968 (15 U.S.C. Sec. 1701 et seq.).

It is urged that the relationship between the defendants and the citizens of South Dakota is one of a party borrowing money and mortgaging his land and the party lending money and accepting the mortgage. It is a mortgagor-mortgagee relationship, not a buyer-seller. They conclude that "(n)othing could be clearer from all of the foregoing than the fact that 'notes' and 'evidence of indebtedness' in the Securities Act of 1933 were not given in the context of real estate transactions and were not intended to regulate the same." Defendants' brief at page 52.

The S.E.C. takes issue with the defendants' arguments including the characterization of the notes in question as "real property notes". The S.E.C. contends that since the notes on their face purport to obligate the general credit of the defendant Thunderbird Valley, Inc., and the obligation to pay is not by the terms of the notes limited to a specifically identified parcel of real estate, they are not real property notes. The S.E.C. contends further that although these notes are not investment contracts they are, nevertheless, securities subject to regulation unless exempted. In addition, the Housing and Urban Development Act of 1968, 15 U.S.C. Sec. 1701 et seq., applies to the sale or leasing of land in interstate commerce not with the sale of notes and evidences of indebtedness.

Neither party has cited a case on point. However, there are a number of decisions concerning the definition of "securities" as used within the 1933 Act, which are instructional and support my decision that the notes and evidences of indebtedness in controversy here are securities.

▉▉ It is federal law that controls the determination of whether or not these documents are securities. Farrell v. United States, 321 F.2d 409, 416 (9th Cir. 1963) and cases cited therein. The ordinary terms of "any note" or "evidence of indebtedness" are self-defining and require no further definition. *Farrell, supra,* at p. 417. The definition I

---

2. 15 U.S.C. Sec. 77b, defining the word "security" in the Security Act of 1933, states:

When used in this subchapter, unless the context otherwise requires—

(1) The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

apply is one that permits the "fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance of 'the many types of instruments that in our commercial world fall within the ordinary concept of a security.'" S.E.C. v. W. J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). As used in the Securities Act of 1933, "the term 'security' 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.' (citations omitted)." Rekant v. Desser, 425 F.2d 872, 878 (5th Cir. 1970). Previous decisions have not been controlled by the nature of the assets in back of a particular document or offering, but have tested the document by "what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect." S.E.C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 352–353, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943). Congress did not intend to adopt a narrow or restrictive concept of security in defining that term. Tcherepnin v. Knight, 389 U.S. 332, 338, 88 S.Ct. 548, 19 L. Ed.2d 564 (1967). A promissory note has been held a security, Llanos v. United States, 206 F.2d 852 (9th Cir. 1953), as has an evidence of indebtedness. United States v. Monjar, 147 F.2d 916 (3d Cir. 1945).

■■ Based upon these principles I conclude that the notes and evidences of indebtedness attached to the S.E.C.'s pleadings are securities within the meaning of the Securities Act of 1933. The defendants have issued notes as investments, paying relatively high rates of interest [3] to induce South Dakota citizens to invest their money. Generally, the notes in question make monthly interest payments for a stated period of time with the principal due with the last interest payment. The Thunderbird Valley, Inc., notes are secured by land situated in the State of Arizona, although liability is not specifically limited to such land. The notes were negotiated to South Dakota citizens in much the same manner as other undisputed securities are placed. Indeed, counsel for Thunderbird Valley, Inc., represents that defendant Clifton is a licensed security dealer with the National Association of Securities Dealers and engaged in the sale of other securities. The defendants' argument that the 1933 Act was not intended to embrace realty notes is not totally without merit but it is not persuasive in light of the Act's all-encompassing definition of a security, and the various exemptions afforded real property notes, none of which the defendants claim. See Rule 234 promulgated under the 1933 Act and Sections 304(a)(5) and (a)(10) of the 1939 Trust Indenture Act. While Congress has deemed it appropriate to exempt certain securities from regulation, it nevertheless remains that they are securities and without specific exemption, are subject to regulation. The H.U.D. Act of 1968 fails to regulate this aspect of Thunderbird Valley, Inc.'s business because that Act deals with the sales and leases of the real property, not the sale of notes and evidences of indebtedness in issue in this litigation.

The defendants' notes are securities and, therefore, their motions challenging subject matter jurisdiction and for summary judgment are denied.

---

3. Through May, 1972, Thunderbird Valley, Inc., issued 6% discount notes; that practice was voluntarily abandoned. The rest of the notes pay 10% interest.